UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re

    Timothy P Hurley,                                    Case No. 16-32442-beh

              Debtor.                              Chapter 7

    Wendy A Brandt,

              Plaintiff,

    v.                                                      Adversary No. 17-2048

    Timothy P Hurley,

              Defendant.

**DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    The debtor-defendant, Timothy Hurley, filed a chapter 7 petition on December 30, 2016. On February 20, 2017, Mr. Hurley's ex-wife, Wendy Brandt, filed a complaint seeking a determination that certain debts assigned to Mr. Hurley by the parties' Marital Settlement Agreement are nondischargeable under 11 U.S.C. section 523(a)(15). Mr. Hurley admitted the terms of the Marital Settlement Agreement but denied the debts were nondischargeable. Ms. Brandt sought summary judgment.[1]

---

[1] At a pretrial conference in this matter, the parties indicated that they were unsure of the exact amount of the debt at issue, and therefore they request a determination as to only the nature of the challenged debt—dischargeable, or nondischargeable—not the precise amount. *See* CM-ECF, Doc. No. 7. For purposes of this decision, the court will refer to the amounts recited in the Marital Settlement Agreement.

The key dispute is whether the Marital Settlement Agreement creates an obligation or debt that runs from the debtor to Ms. Brandt. Ms. Brandt argues that it does, while the debtor asserts that the debts are owed directly to creditors, not to Ms. Brandt. As a secondary argument, the debtor contends the absence of a hold harmless provision renders his obligations to Ms. Brandt dischargeable. Because the court finds that the Marital Settlement Agreement creates obligations which run from the debtor to Ms. Brandt, the court determines those debts are nondischargeable under 11 U.S.C. § 523(a)(15), and will enter judgment accordingly.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. section 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered under 28 U.S.C. section 157(a). Both parties acknowledge that the determination of whether a debt is dischargeable is a core proceeding under 28 U.S.C. section 157(b)(2)(I). In addition, the parties, both represented by counsel, have impliedly consented to this court's interpretation of the Marital Settlement Agreement under state law, and therefore the court may enter a final judgment. *Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1948 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (bankruptcy court had jurisdiction to interpret contract under state law); CM-ECF, Doc. Nos. 1, 4. This decision constitutes the court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

# BACKGROUND

The following facts are undisputed. Ms. Brandt and Mr. Hurley previously were married. Their marriage ended in divorce on June 4, 2014, when the Outagamie County Circuit Court entered its findings of fact, conclusions of law, and judgment of divorce (the "Judgment"). The Judgment incorporated the parties' Marital Settlement Agreement ("MSA"), which they both signed. Ms. Brandt appended copies of those state court documents to her affidavit on summary judgment in this court. Pursuant to the MSA, the parties each assumed specific debts and financial responsibilities.

Seven provisions of the MSA are relevant here. Paragraph 11 concerns the parties' second mortgage on their residence, and provides: "the respondent [Mr. Hurley] will pay the second mortgage on the homestead . . . until the house is sold." CM-ECF, Doc. No. 9-1, at 25.

Paragraph 12 sets forth the parties' marital debt:

> The parties having the following marital debt:
> A. Citi Credit Card, $2,900.0[0]
> B. Kohls Credit Card, $400.00
> C. JCPenn[e]y Credit Card, $600.00
> D. American TV $2,999.51
> E. Capital One $500.00
> F. Dell $2,000.00
> G. Petitioner's student debt $46,000.00

*Id.*

Paragraphs 13 and 14 assign the parties obligations with respect to the marital debt described in Paragraph 12:

> 13. [T]he respondent [Mr. Hurley] agrees to pay $15,000.00 toward the student loan and $4,200 for the rest of the debt. The petitioner [Ms. Brandt] will pay the American [*sic*] in return for getting all the appliances and [*sic*] purchased by that loan. She shall not be entitled to an offset. Effective June 1, 2014 the respondent will pay at least $300.00 or more at his option on the amount he owes. That amount shall carry the judgment rate of interest of 5%.
>
> 14. The amount that the respondent owes is subject to the following potential adjustments:
>    A. Any amounts that are paid out of the 2013 tax refund[2] will reduce the $4,200.00 by ½; $4,200.00 being ½ of the $8,400.00 of marital debt.[3]
>    B. That should any of the refund be used to pay past due child support for nonmarital children's [*sic*], then that shall be added to what the respondent owes the petitioner. . . .

*Id.* at 26.

The next two MSA paragraphs provide additional instruction regarding payment of the marital debt and other obligations:

> 15. The petitioner [Ms. Brandt] will be required to pay the following debts after payment of the amounts from the refund and hold the respondent [Mr. Hurley] harmless for payment of same:
>    A. Citi Credit Card
>    B. Kohls Credit Card
>    C. JCPenn[e]y Credit Card
>    D. Capital One
>    E. Dell
>    F. Petitioner's student debt

---

[2] Paragraph 8 of the MSA provides that the balance of any refund from the parties' joint 2013 tax return—after the refund is first applied to pay for the cost of preparation, the purchase of a savings bond for the parties' son, and the repayment of two monthly house payments made by Ms. Brandt—will go toward paying the marital debts listed in the agreement.

[3] The marital debt total in Paragraph 12, minus the American TV balance and student loan debt, is $6,400. The $8,400 total noted in Paragraph 14(A) is likely the arithmetic discrepancy prompting the parties to return to state court for a determination of the correct debt total. *See* footnote 1, *supra.*

G. Any debts incurred by her since the commencement of this action.

H. Any debts in her name not otherwise disclosed.

16. The respondent [Mr. Hurley] will be required to pay the following debts and hold the petitioner [Ms. Brandt] harmless for payment of same:

A. The loan on the Kia Optimum [*sic*]

B. The second mortgage until the property is sold and closed.

C. Any debts incurred by him since the commencement of this action.

D. Any debts in his name not otherwise disclosed.

E. To the petitioner the amounts set forward above.

*Id.*

Paragraph 27 recaps Paragraphs 12-14:

27. SUMMARY OF AMOUNT OWED BY RESPONDENT TO PETITIONER

| | |
|---|---|
| ½ of marital component of student loan | $15,000.00 |
| ½ of marital debt except American TV | $4,200.00 |
| Jewelry | $2,500.00 |
| Total | $21,700.00 |

This may be modified by:
1. ½ of the amounts paid on marital debt from the 2013 tax return.
2. The amount will be increased by any amounts withheld from the state or federal tax refund going to pay child support arrearages of the respondent.

*Id.* at 28. Mr. Hurley's schedules in his main bankruptcy case list Ms. Brandt as both a priority unsecured creditor and a general unsecured creditor. *See* Case No. 16-32442-beh, CM-ECF, Doc. No. 9, at 11, 22.

### ARGUMENTS

Ms. Brandt argues that the debtor's obligations to pay her the amounts allocated to him in the MSA—his responsibility to pay $15,000 toward her student loans, $4,200 toward the marital retail debt, and the second mortgage on the marital residence—are nondischargeable pursuant to 11 U.S.C. section 523(a)(15). She asserts that these obligations are a property settlement, and

are "debts to a . . . former spouse . . . incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . . ." 11 U.S.C. § 523(a)(15). She also argues that since the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was enacted, there is little differentiation between support obligations and property settlements, and that in a chapter 7 case, all debts owed a former spouse are nondischargeable if incurred in the course of a marital dissolution proceeding. CM-ECF, Doc. No. 9, at 3, citing *Zimmermann v. Hying (In re Hying)*, 477 B.R. 731, 735 (Bankr. E.D. Wis. 2012).

Debtor Hurley disagrees. He claims that those particular amounts are debts owed to creditors, not to his former spouse. Also, according to the debtor, because Ms. Brandt has not paid the underlying debts herself and thereby created a right of indemnification from the debtor, he contends he does not owe a debt *to* Ms. Brandt. He maintains that "[t]he MSA does not indicate that Hurley is holding Brandt harmless for these debts," and that "the MSA does not contain a hold harmless," *see* CM-ECF, Doc. No. 10. He notes that the MSA holds open maintenance as to Ms. Brandt, but implicitly rejects it as a hold harmless equivalent. *See* CM-ECF, Doc. No. 9-1, at 24, ¶ 7.

## DISCUSSION

Summary judgment is appropriate when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Tapley v. Chambers*, 840 F.3d 370, 376 (7th Cir. 2016); Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. Here, the

parties dispute only the legal interpretation and effect of certain contract terms in the MSA, and consequently the application of section 523(a)(15) of the Code.

An MSA is a type of contract. *Taylor v. Taylor,* 2002 WI App 253, ¶7, 258 Wis. 2d 290, 653 N.W.2d 524. Contract interpretation is particularly suited to disposition by summary judgment. *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 705 (7th Cir. 1995).

Section 523(a)(15) of the Bankruptcy Code provides in relevant part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
>
> . . .
>
> > (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce, decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

11 U.S.C. § 523(a)(15). Congress intended this exception to discharge, along with section 523(a)(5),[4] to make both support and nonsupport debts nondischargeable. *In re Strom,* 569 B.R. 494, 496-97 (Bankr. W.D. Wis. 2017), citing *Hebel v. Georgi (In re Georgi),* 459 B.R. 716, 720 (Bankr. E.D. Wis. 2011). If incurred during a marital dissolution proceeding, all debts owed to a spouse, former spouse, or child of a debtor are nondischargeable. *Strom,* 569 B.R. at 497, citing *In re Hying,* 477 B.R. at 735.

---

[4] 11 U.S.C. § 523(a)(5) excepts from discharge any debt "for a domestic support obligation." The Bankruptcy Code defines a "domestic support obligation" as a debt having four elements: (1) "owed to or recoverable by . . . a spouse, former spouse, or child of the debtor"; (2) "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated"; (3) "established or subject to establishment before, on, or after the [petition date] by reason of applicable provisions of . . . a separation agreement, divorce decree, or property settlement agreement . . . [or] an order of a court of record"; and (4) "not assigned to a nongovernmental entity." 11 U.S.C. § 101(14A).

Statutory exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Strom,* 569 B.R. at 497, citing *In re Morris*, 223 F.3d 548 552 (7th Cir. 2000). That is the general rule. But Congress and courts have long recognized a tempering of that policy when the debt arises from a divorce agreement or decree, because notwithstanding the Code's fresh start policy, sections 523(a)(5) and (15) protect ex-spouses and children in matters of alimony, maintenance, support and divorce-related obligations. *See Strom,* 569 B.R. at 497, citing *In re Crosswhite*, 148 F.3d 879, 881-82 (7th Cir. 1998); *see also Trentadue v. Gay (In re Trentadue)*, 837 F.3d 743, 749 (7th Cir. 2016).

In determining whether the debts at issue—the $4,200 for marital retail debt, the $15,000 for Ms. Brandt's student loan debt, and the obligation to hold Ms. Brandt harmless for payment of the second mortgage on the residence[5]—are excepted from discharge under section 523(a)(15), the court must answer two questions in the affirmative: (1) Are these debts "to" a spouse, former spouse, or child of the debtor; and (2) Were the debts incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement or divorce decree? The court addresses the two

---

[5] In their briefs, both parties refer to Mr. Hurley's agreement to pay $2,500 for items of jewelry that he took and apparently sold prior to the parties' divorce. CM-ECF, Doc. No. 9, at 2; CM-ECF, Doc. No. 10, at 2. The complaint does not refer to this obligation—instead the complaint expressly mentions the $4,200 payment on marital debt, the $15,000 payment on student loans, and the responsibility to pay the second mortgage. The complaint likewise asserts that Mr. Hurley's "obligations to pay the debts allocated to him in the MSA" are nondischargeable. The $2,500 payment for jewelry does not represent a payment toward an underlying debt to a third party that was assigned/allocated to Mr. Hurley in the MSA. The court therefore does not read the complaint as asking for a dischargeability determination regarding the $2,500 jewelry payment, and declines to issue such a ruling.

categories of debts identified in the complaint—the marital and student loans debts, and the second mortgage—separately below.

### A. The MSA created debts owed to Ms. Brandt for payments toward the marital and student loan debts.

Ms. Brandt asserts that the MSA requires Mr. Hurley to pay $4,200 toward half of the marital debt, and $15,000 for a portion of her student loans, directly to Ms. Brandt. Mr. Hurley does not respond to this contention head-on. Instead, he *suggests,* without expressly stating, that the MSA does not require him to pay these amounts *to* Ms. Brandt, but rather to the underlying creditors. *See, e.g.,* CM-ECF, Doc. No. 10, at 2 (acknowledging that Mr. Hurley agreed "to pay $4200 on the following debt of the parties: CitiCredit Card, Kohls Credit Card, JCPenny Credit Card, Capital One and Dell," and "to pay $15,000 on the student loans of Brandt," while evading the issue of the intended payee); *id.* at 3 ("If the court were to find that Hurley is obligated to pay Brandt, she may never pay on the underlying debt and the purpose and intent of the MSA would be usurped."); *see also* CM-ECF, Doc. No. 4 (Answer) at ¶ 5 (denying, among other things, that "the defendant was responsible for paying *the plaintiff* $15,000 towards her student loans; $4,200 in marital debt") (emphasis added).

By implying that the MSA does not create a debt between him and his ex-wife, but instead creates (or maintains) a debt between him and the creditors themselves, Mr. Hurley disregards significant, plain contract language. Paragraph 12 sets out the marital retail debt by creditor, and also lists

"petitioner's student debt." Paragraph 13 describes that the debtor will pay $15,000 toward the student loan and $4,200 for the rest of the debt. Paragraph 13 speaks in terms of *amounts* owed by the debtor, not *debts* he owes to specific creditors. This language undermines the debtor's argument that he is to pay the creditors and not his ex-spouse. The requirement that he will pay "at least $300.00 or more at his option on the *amount* he owes," further undercuts Mr. Hurley's position. (Emphasis added.)

Paragraph 14 is more explicit, referring to "what the respondent owes the petitioner." *See also* Paragraph 27 (calculating the total amount owed by the respondent to the petitioner, which includes $19,200 for half of the marital component of the student loan and half of the marital debt, except the American TV debt).

Paragraphs 12 through 15 of the MSA are consistent with the parties' intent that Mr. Hurley be obligated to Ms. Brandt for a dollar portion of the marital debt and student loan balances, and that Ms. Brandt would remain liable to the creditors themselves. Paragraph 15 expressly states that Ms. Brandt will be the person making payments to the creditors: "The petitioner will be required to pay the following *debts* after payment of the *amounts* from the refund and hold the respondent harmless for payment of same: . . . ." (Emphasis added.) Paragraph 15 reiterates the credit card and retail companies listed in Paragraph 12, as well as "F. Petitioner's student debt; G. Any debts incurred by her since the commencement of this action; H. Any debts in her name not otherwise disclosed." The juxtaposition of the

petitioner's payment of "the following *debts*" with (the debtor's) "payment of the *amounts* from the refund" further clarifies that Mr. Hurley is to pay Ms. Brandt, and Ms. Brandt is to pay those creditors.

Mr. Hurley's next argument is that "the MSA does not indicate that Hurley is holding Brandt harmless for these debts,"—"these debts" presumably being his payments toward the marital retail debt and student loans—and further asserts that "[u]nless and until Brandt pays these underlying obligations, she has no loss." CM-ECF, Doc. No. 10, at 3. But this argument is a red herring. As to the marital retail debts and student loan debts, the MSA accomplishes *directly*—by imposing an actual, fixed liability—what a "hold harmless" provision would have done *indirectly*—by imposing a contingent liability, which would become fixed only if Ms. Brandt became entitled to reimbursement or indemnification for payments she made on debts assigned to Mr. Hurley.[6] And, to the extent Mr. Hurley suggests that an express "hold harmless" provision is required, citing *In re Sturdivant*, 289 B.R. 392 (Bankr. W.D. Ark. 2003), or that a liability cannot arise until a party suffers "losses" by making payments assigned to another under an MSA, this court agrees with other courts in this district that have rejected those arguments. *See, e.g., Georgi*, 459 B.R. at 720; *Jacobs v. Jaeger-Jacobs (In re Jaeger-Jacobs)*, 490 B.R. 352, 358 (Bankr. E.D. Wis. 2013).

---

[6] A debt is a "liability on a claim," 11 U.S.C. § 101(12), and a claim includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(15)(A).

Finally, the debtor's fear that Ms. Brandt "may never pay on the underlying debt and the purpose and intent of the MSA would be usurped" if the court finds that he is obligated to pay her, is unfounded. The debtor misunderstands the effect of the MSA's division of liability. In assigning Ms. Brandt the debts identified in Paragraph 15, the MSA created a right of indemnification in favor of Mr. Hurley: If he makes the required $4,200 and $15,000 payments to Ms. Brandt, and Ms. Brandt fails to apply those amounts toward the underlying debts, Mr. Hurley may enforce the "hold harmless" provision of Paragraph 15 to seek reimbursement from her, if he is held liable for those debts by third parties.

Reading the MSA as a whole, *Tempelis v. Aetna Cas. & Sur. Co.*, 169 Wis. 2d 1, 9, 485 N.W.2d 217 (1992), the parties' intent is clear, both through the contract terms and structure. The MSA obligates Mr. Hurley to pay directly to Ms. Brandt $15,000 toward her marital student loan debt, and $4,200 toward the marital retail debt other than to American TV. These are new obligations created by the MSA, and thus are debts owed to a former spouse incurred in a divorce proceeding, rendering them non-dischargeable under section 523(a)(15).

**B. The MSA's "hold harmless" provision regarding the second mortgage created a new debt owed to Ms. Brandt.**

Although the MSA requires Mr. Hurley to make payments on the second mortgage directly to the mortgage creditor, that does not negate the possibility that the MSA created a debt owed *to* Ms. Brandt in connection with this obligation. Paragraph 16 describes debts for which the debtor will remain

directly liable—including the second mortgage—and states that he will "hold the petitioner harmless for payment of the same." By holding Ms. Brandt harmless for those obligations, the MSA creates a new debt between them. *Jaeger-Jacobs*, 490 B.R. at 357 ("A provision in a divorce decree to hold harmless or indemnify a spouse for joint obligations incurred during a marriage creates a 'new' debt, running solely between the former spouses."); *see also, In re Harn*, No. 07-8099, 2008 WL 130914 (Bankr. C.D. Ill. Jan. 10, 2008); *In re Washburn*, No. 09-80842-MHM, 2010 WL 4008154 (Bankr. N.D. Ga. Sept. 16, 2010); *In re Wodark*, 425 B.R. 834 (B.A.P. 10th Cir. 2010). This new debt was "incurred" through the divorce decree, and therefore also is nondischargeable under section 523(a)(15). *Jaeger-Jacobs*, 490 B.R. at 357.

## CONCLUSION

For the reasons explained above, the debtor's obligations to the plaintiff to pay her an amount representing a portion of the marital debts (listed as $4,200 in the MSA) and $15,000 toward her student loans, as well as his obligation to hold her harmless from the payment of the parties' second mortgage, meet the necessary elements for exception to discharge under 11 U.S.C. section 523(a)(15). The plaintiff's motion for summary judgment therefore is granted. A separate order will be entered.

Dated: February 7, 2018

By the Court:

Beth E. Hanan
United States Bankruptcy Judge